[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12963

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ERIC KING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:02-cr-00016-TFM-C-1

_____

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Eric King appeals his 36-month prison sentence imposed upon revocation of his supervised release. He argues that his sentence is substantively unreasonable because (1) his conduct did not constitute a new criminal offense; (2) he accepted responsibility for his actions; and (3) he was less than a year away from completing his supervised release. After careful review, we affirm.

I.

On January 30, 2002, King was indicted on one count of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846. He pled guilty, and was sentenced to 168 months in prison, followed by five years of supervised release. King completed his prison sentence in 2014 and then began serving his supervised release. A condition of his supervised release was the requirement that he participate in drug testing and treatment.

Between February and December 2017, the Probation Office submitted five reports to the District Court indicating that King had submitted urine samples that tested positive for methamphetamine and had admitted to using methamphetamine. The Probation Office recommended that King be allowed to continue his supervised release while receiving outpatient substance abuse

treatment.  The Court agreed with the recommendations and allowed King to remain on supervised release.

In January 2018, the Probation Office petitioned the District Court to revoke King's supervised release because he (1) failed to report for urine surveillance testing; (2) submitted a urine sample that tested positive for methamphetamine; (3) failed to attend drug treatment and counselling sessions; and (4) was discharged from a drug treatment program for failing to comply with its conditions. King admitted the violations.  The District Court accordingly revoked his supervised release and sentenced him to serve six months in prison, followed by 36 months of supervised release.  King served his prison time and once again was placed on supervised release.

Between August and September 2018, the Probation Office twice reported to the District Court that King tested positive for methamphetamine but recommended he remain on supervised release.  The Court agreed.

In December 2018, the Probation Office petitioned the District Court to revoke King's supervised release because King had violated its conditions by failing to attend drug testing on two occasions and failing to report for drug treatment on four occasions. The District Court declined to revoke King's supervised release but extended its term for 24 months and added a condition that he participate in location monitoring for eight months.

In July 2021, the Probation Office again petitioned the District Court to revoke King's supervised release. The Probation Office stated that King had once again violated its terms by failing to attend the required substance abuse treatment programs on three occasions, failing to report to his probation officer as directed, and failing to file a monthly supervision report for June 2021. The Probation Office recommended that King serve 36 months in prison with no supervised release to follow, noting that he had numerous opportunities to address his substance abuse since 2017 and was no longer availing himself of treatment. Although the guidelines prescribed a prison sentence of four to ten months, the Probation Office recommended 36 months. The Probation Office justified its recommendation by stating that a prison sentence would give King an extended period of forced sobriety, impose significant punishment given his repeated offenses, take him out of society where he was consistently under the influence of methamphetamine, and allow the Probation Office to focus its resources on individuals who were amenable to treatment.

At the conclusion of his revocation hearing, King argued for a sentence within the guideline range of four to ten months. The Government requested a 36-month prison term with no additional supervised release. The District Court then revoked King's supervised release and imposed a prison term of 36 months with no supervised release to follow. The Court stated that it needed to do what was necessary to protect the public and to protect King from himself. The Court recalled that it had treated King leniently in the

past, yet he continued to test positive for drugs and appeared unable to follow through with his treatment. The Court added that King "need[ed] at least a 24-month term of imprisonment to have a chance at [participating in] the intensive residential substance abuse treatment program" the Bureau of Prisons provided.

## II.

We review the substantive reasonableness of a sentence, including a sentence imposed upon revocation of supervised release, under a deferential abuse of discretion standard considering the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007); *United States v. Sweeting*, 437 F.3d 1105, 1106–07 (11th Cir. 2006) (finding that the same reasonableness standard that applies in reviewing an initial prison sentence also applies in reviewing a prison sentence imposed upon revocation of supervised release). The party challenging the sentence bears the burden to establish that the sentence is unreasonable according to the facts of the case and the applicable § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

Pursuant to 18 U.S.C. § 3583(e)(3), a district court may:

[R]evoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court . . . finds by a

> preponderance of the evidence that the defendant vi-
> olated a condition of supervised release.

In deciding whether to revoke the supervised release, the court must consider "the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D)," and (a)(4)–(7)[1] before revoking supervised release and imposing a prison term.  § 3583(e).

King argues that the 36-month prison sentence that the District Court imposed after revoking his supervised release was substantively unreasonable given a proper application of the § 3553(a) factors.  He contends that the conduct to which he admitted (violations of conditions of supervised release) does not support a variance from the guideline sentence range of four to ten months' imprisonment.  This is so because (1) the sentence imposed is "nine times the low end and more than 3.5 times the high end of the

---

[1] Section 3583(e) does not include § 3553(a)(2)(A) as an applicable factor.  Section 3553(a)(2)(A) covers the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  While it appears that Congress did not intend that courts consider § 3553(a)(2)(A) when imposing a prison sentence after revoking supervised release, this Court has not resolved that question, and there is a circuit split on the issue.  *See United States v. Vandergrift*, 754 F.3d 1303, 1308–09 (11th Cir. 2014) (finding consideration of § 3553(a)(2)(A) on revocation of supervised release was not plain error because neither this Court nor the Supreme Court has resolved the issue).  In *Sweeting,* we suggested in dicta that § 3553(a)(2)(A) is an applicable factor under § 3583(e).  437 F.3d at 1107.  This issue is not in dispute here, but this Court should squarely address it.

Chapter Seven advisory[2] guidelines"; (2) he repeatedly accepted responsibility for his conduct; and (3) he was less than one year away from completing his supervised release. We are unpersuaded.

A district court imposes a substantively unreasonable sentence, and thus abuses its discretion, when it "(1) fails to afford consideration to relevant [§ 3553(a)] factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted). We say this while recognizing that we give "due deference" to the district court's consideration and weighing of relevant sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (internal quotation marks omitted).

Whether the applicable § 3553(a) factors justify a variance is a discretionary call. *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). Although a major variance should be supported by a more significant justification than a minor variation, *Gall*, 552 U.S. at 50, 128 S. Ct. at 596–97, we do not presume that a sentence outside of the prescribed guideline range is unreasonable. *Irey*, 612 F.3d at 1187. A sentence above the prescribed guideline range is usually called for because a sentence within the range would not

---

[2] The Sentencing Guidelines are advisory rather than mandatory as originally enacted. *United States v. Booker*, 543 U.S. 220, 245–46, 125 S. Ct. 738, 757 (2005) (majority opinion of Breyer, J.).

adequately reflect the relevant purposes of a sentence as set out in § 3553(a). *United States v. Moore*, 22 F.4th 1258, 1269 (11th Cir. 2022) (holding that an 18-month prison sentence imposed upon the third revocation of the defendant's supervised release was substantively reasonable when the guideline range was 8 to 14 months).

Here, King's above-the-guideline range sentence of 36 months was substantively reasonable. The District Court acted within its discretion in giving greater weight to the nature and frequency of King's violations of the conditions of his supervisory release—including his continual methamphetamine use, failure to attend substance abuse treatment programs, and failure to report to his probation officer—than to his admission of the violations, lack of new criminal charges, and near completion of the term of the release.

## III.

## A.

After the District Court sentenced King and elicited the parties' objections, King did not object to the sentence on the ground that the Court had improperly based his sentence on the need for the sentence "to provide [him] with needed educational or vocational training, medical care, or other correctional treatment," i.e., rehabilitation. 18 U.S.C. § 3553(a)(2)(D). The dissent argues that the Court erred in basing King's sentence on his need for rehabilitation and that, under the plain error doctrine, we should vacate the sentence and remand the case for resentencing.

21-12963                Opinion of the Court                    9

The dissent's argument is based on our decision in *United States v. Vandergrift*, 754 F.3d 1303 (11th Cir. 2014). There, applying *Tapia v. United States*, 564 U.S. 319, 131 S. Ct. 2382 (2011), we held that the District Court, in revoking the defendant's supervised release, erred in sending him to prison for the purpose of rehabilitation. *Vandergrift*, 754 F.3d at 1311.

In *Tapia,* the Supreme Court held that, under 18 U.S.C. § 3582(a), "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." 564 U.S. at 334–35, 131 S. Ct. at 2393. Then, in *Vandergrift*, we extended *Tapia* and held that the District Court erred when it imposed a prison sentence upon revocation of supervised release because it "*considered* rehabilitation when crafting Vandergrift's sentence of imprisonment." 754 F.3d at 1311. *Vandergrift* so held even though § 3583(e) directs courts to consider § 3553(a)(2)(D), which covers rehabilitation, and *Tapia* only addressed the initial imposition of a prison sentence under § 3582(a). *See Tapia*, 564 U.S. at 334–35. But *Vandergrift* binds us.

King has not made a *Vandergrift* argument here, on appeal. King therefore forfeited the issue in this Court as well as in the District Court. *See United States v. Olano*, 507 U.S. 725, 732–33, 113 S. Ct. 1770, 1777–78 (1993) (discussing appellate courts' discretion to correct errors that were forfeited in district court) (citing Fed. R. Crim P. 52(b)); *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc) (holding that the failure to raise an issue in an initial brief on appeal should be treated as forfeiture of the issue).

The Dissent is correct that at sentencing, King challenged the substantive reasonableness of his sentence on some grounds. *See post* at 1; *supra* at 2. But King's appellate brief here does not include an argument that the District Court's sentence was unreasonable because the Court improperly considered rehabilitation in fashioning King's sentence. As we have explained, "[a]ny issue that an appellant wants the Court to address should be specifically and clearly identified in the brief." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004); *see* Fed. R. App. P. 28(a)(5) ("The appellant's brief must contain, under appropriate headings and in the order indicated . . . a statement of the issues presented for review."). So, the appellant's initial brief must contain the "argument[s]" the appellant wants this Court to consider so that the appellee has a fair opportunity to respond. *Access Now*, 385 F.3d at 1330. Indeed, courts typically find that challenging the substantive reasonableness of a sentence without specifically arguing that the district court improperly considered rehabilitation does not preserve that issue. *See, e.g.*, *United States v. Replogle*, 678 F.3d 940, 942 (8th Cir. 2012) (finding an appellant who raised some challenges to the substantive and procedural reasonableness of his sentence forfeited the rehabilitation issue by not raising it in his initial appellate brief).

Moreover, in *Vandergrift*, we categorized improper consideration of rehabilitation as a "procedural error" because it constituted consideration of an "improper § 3553(a) factor"—that is, § 3553(a)(2)(D), which covers "provid[ing] the defendant with

needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 754 F.3d at 1310–11 (internal quotation marks omitted). We then found that plain error review applied to the District Court's consideration of inapplicable § 3553(a) factors because the defendant did not object to the procedural reasonableness of his sentence in the District Court. *See id.* at 1307. In *United States v. Alberts*, we also called improper consideration of rehabilitation a procedural error and reviewed a claim that the District Court improperly considered rehabilitation for plain error because the defendant did not specifically object to consideration of rehabilitation in the District Court. 859 F.3d 979, 985 (11th Cir. 2017). Despite any gray area between procedural and substantive errors, the upshot is that a defendant must specifically challenge consideration of rehabilitation to preserve the issue in district court and on appeal.

## B.

In short, because King forfeited the *Vandergrift* issue below, we can only review it for plain error.[3] That means we cannot

---

[3] Appellate courts *can* review an error not raised before the district or appellate court. *See, e.g., United States v. Godoy*, 821 F.2d 1498, 1504 (11th Cir. 1987); *see also United States v. Broussard*, 669 F.3d 537, 552–53 & n.10 (5th Cir. 2012) (applying plain error when the defendant failed to raise a *Tapia* argument after not raising one at trial or in an initial appellate brief; the court addressed the issue *sua sponte* because the Supreme Court decided *Tapia* after the defendant filed his initial appellate brief). But we would only take up an issue the defendant never raised at either level in "a rare situation." *Godoy*,

vacate his sentence unless: (1) there was an error; (2) the error was plain—meaning clear under this Court's or Supreme Court precedent; and (3) the error affected King's substantial rights. *See Olano*, 507 U.S. at 732–35, 113 S. Ct. at 1777–78. Correcting a plain error is also discretionary; we only do so when an error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 732, 113 S. Ct. at 1776 (internal quotation marks omitted). The plain error rule promotes the fair and efficient resolution of issues in the trial court; it encourages parties to surface an issue when it occurs and, depending on the trial court's resolution of the issue, creates the record for meaningful appellate review. *See United States v. Rodriguez*, 627 F.3d 1372, 1380 (11th Cir. 2010) ("By not objecting the lawyer can avoid any risk that an ambiguous statement will be clarified or an actual error corrected on the spot in response to an objection; she can keep the issue in her pocket in hopes that it will serve as a get-out-of-judgment-free card on appeal.").

Considering the record of King's sentencing as a whole, we doubt that the District Court made a *Vandergrift* error. The record does not clearly show that the District Court considered the need for King's rehabilitation as a purpose for his sentence. But assuming the Court plainly erred, it did not affect King's substantial rights

---

821 F.2d at 1504. Even if we found a *Vandergrift* error here, we would not find *sua sponte* intervention appropriate.

or seriously affect the fairness, integrity, or public reputation of the revocation proceedings.

## C.

In *Tapia v. United States*, the Supreme Court held that "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." 564 U.S. 319, 334–35, 131 S. Ct. 2382, 2392–93 (2011). The Court was applying § 3582(a), which precludes federal courts from imposing a prison sentence as a "means of promoting correction and rehabilitation." The Court also discussed how 28 U.S.C. § 994(k) instructs the Sentencing Commission to "insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant." *Id.* at 326, 131 S. Ct. at 2388. In the same breath, the Court emphasized that a district court can discuss "important matters" like rehabilitation programs that are available in prison with defendants during sentencing. *See id.* at 334, 131 S. Ct. at 2392.

Section 3582(a) and § 994(k) are from the Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 211, 98 Stat. 1987 (codified as amended in various sections of 18 and 28 U.S.C.) (the "SRA"). Congress prohibited district courts from considering rehabilitation as a purpose for sentencing defendants to prison because it was eliminating the "medical model" of sentencing. *United States v. Scroggins*, 880 F.2d 1204, 1207 (11th Cir. 1989). The premise of the medical model was that offenders had a "moral disease" and could be

"cured" through "rigorous program[s] of hard work and moral training" in prison. *Id.* at 1206.

Under the medical model, courts would sentence offenders to indeterminate prison terms, "establishing only the maximum length of the offender's sentence." *Id.* at 1207. A parole board would then decide the "actual length" of an offender's sentence by monitoring the offender's "rehabilitative progress" while incarcerated. *Id.* Put another way, the parole board would decide when the offender had been rehabilitated such that if released, he could lead a law-abiding life.

By the 1960s, judges and penological experts started doubting the efficacy of the medical model. *See id.* In the SRA, Congress effectively terminated use of the medical model because of two main problems. *Mistretta v. United States*, 488 U.S. 361, 366, 109 S. Ct. 647, 652 (1989) (citing S. Rep. No. 98-225 at 38 (1983)). The first "was the great variation among sentences imposed by different judges upon similarly situated offenders." *Id.* As then-Judge Breyer explained, the Sentencing Commission found that, before the SRA:

> the region in which the defendant is convicted is likely to change the length of time served from approximately six months more if one is sentenced in the South to twelve months less if one is sentenced in Central California . . . . [F]emale bank robbers are likely to serve six months less than their similarly situated male counterparts . . . [and] black [bank robbery] defendants convicted . . . in the South are likely to actually serve approximately thirteen months

longer than similarly situated bank robbers convicted
. . . in other regions.

Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 HOFSTRA L. REV. 1, 5 (1988) (citation omitted) (alterations in original).

The second problem with the medical model was "the uncertainty as to the time the offender would spend in prison." *Mistretta*, 488 U.S. at 366, 109 S. Ct. at 652. This uncertainty undermined honesty in sentencing because in most cases offenders did not serve their actual sentences. *See Breyer*, *supra* at 4. They instead served until the Parole Commission decided they had been rehabilitated and could be released. *See id.*

Given its concerns about indeterminate sentencing under the medical model, Congress replaced the medical model with a determinate and presumably fairer sentencing system. *Scroggins*, 880 F.2d at 1208; *United States v. Rolande-Gabriel*, 938 F.2d 1231, 1235 (11th Cir. 1991) ("Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders. [Congress also] sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity.") (quoting U.S.S.G., Ch. 1, Pt. A, at 1.2 (1990)). As part of sentencing reform, Congress abolished the United States Parole Commission and the system of parole. *See Scroggins*, 880 F.2d at 1208. To ensure that courts did not sentence defendants to prison for the purpose of rehabilitation, Congress instructed that

"imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Congress likewise instructed the Sentencing Commission to "insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant." 28 U.S.C. § 994(k).

## D.

With this background in hand, we consider the District Court's statement at sentencing—that King "need[ed] at least a 24-month term of imprisonment to have a chance at [participating in] the intensive residential substance abuse treatment program" the Bureau of Prisons provided. *Vandergrift,* applying *Tapia,* precluded the District Court from sentencing King to prison for the purpose of rehabilitation. Although the statute under which the District Court was proceeding, 18 U.S.C. § 3583(e)(3), instructs the district courts to consider 18 U.S.C. § 3553(a)(2)(D) (rehabilitation) in deciding whether to revoke a supervised release, in *Vandergrift,* we extended *Tapia* and decided that, when revoking supervised release, courts cannot "*consider*[] rehabilitation when crafting [a defendant's] sentence of imprisonment."[4] *Id.* at 1311. In *Vandergrift,* the District Court, throughout the sentencing hearing, emphasized

---

[4] Sentencing courts can still "consider an offender's need for rehabilitation in prescribing the conditions of probation or supervised release." *Scroggins*, 880 F.2d at 1208 n.10.

the defendant's need for rehabilitation in prison and then listed "the benefit of the defendant" as one of several factors it considered when fashioning his sentence. *Id.* at 1306, 1311. We likewise held in *Alberts* that the District Court improperly considered rehabilitation when it told the defendant, "[y]our pattern of behavior over the years demonstrates to me you do pose a danger to the community and you need a period of time where you can receive the treatment that you should have." 859 F.3d at 982, 986 (alteration in original). The Court then discussed mitigating factors and imposed the sentence. *Id.* at 982.

Yet in *Vandergrift*, we also emphasized that courts can discuss with defendants the rehabilitation programs that are available in prison. 754 F.3d at 1311 (citing *Tapia*, 564 U.S. at 334, 131 S. Ct. at 2392). Discussing the substance abuse treatment programs that the Bureau of Prisons (the "BOP") provides accords with Congress's expectations. Courts cannot be oblivious to Congress's mandates that the BOP "shall make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse," and "shall . . . provide residential substance abuse treatment . . . for all eligible prisoners." 18 U.S.C. § 3621(b), (e)(1), (e)(1)(C). In addition, "a court may 'make a recommendation concerning the type of prison facility appropriate for the defendant'; and in this calculus, the presence of a rehabilitation program may make one facility more appropriate than another." *Tapia*, 564 U.S. at 334, 131 S. Ct. at 2392

18                    Opinion of the Court                    21-12963

(quoting 18 U.S.C. § 3582(a)).[5]  So, courts can and should think about and discuss substance abuse treatment programs with defendants who have a substance abuse problem.  All courts cannot do is consider rehabilitation as a purpose of a prison term.

In *Vandergrift*, to illustrate how courts can properly discuss rehabilitation, we cited *United States v. Lucas*, 670 F.3d 784 (7th Cir. 2012).  *See Vandergrift*, 754 F.3d at 1311.  In *Lucas*, the Seventh Circuit held that the District Court committed no *Tapia* error when it "briefly mentioned rehabilitative programs" as a benefit that the prison sentence would provide.  670 F.3d at 795.  After imposing a 210-month prison sentence, the court said the "sentence [would] serve to hold the defendant accountable, serve as a deterrent, protect the community, provide the opportunity for

_____

[5] Congress created a mandate that the BOP provide prisoners with substance abuse treatment in the Crime Control Act of 1990.  Pub. L. No. 101-647, § 2903, 104 Stat. 4789, 4913 (1990) (codified as amended at § 3621(b)).  It also added § 3621(e) in 1994 to mandate that the BOP make residential substance abuse treatment available for all prisoners with documented substance abuse issues and to guide the incentives for completion of that program.  Pub. L. No. 103-322, § 32001, 108 Stat. 1796, 1896–97 (1994) (codified at 18 U.S.C. § 3621(e)).  Congress had already passed the SRA, which prohibits basing a prison sentence on rehabilitation, in 1984.  Pub. L. No. 98-473, § 212, 98 Stat. 1987, 1998 (1984) (codified as amended at 18 U.S.C. § 3582(a)).  So, Congress already knew when it amended § 3621 that courts could not sentence defendants to prison for the purpose of promoting rehabilitation.  But it presumably expected courts to take notice of its mandate to the BOP to provide substance abuse treatment.

rehabilitative programs and achieve parity with sentences of similarly-situated offenders." *Id.*

Accordingly, a court only errs under *Tapia* or *Vandergrift* when it actually imposes or extends a prison sentence for the purpose of promoting rehabilitation. A court cannot consider rehabilitation as a purpose—even as one among many—of a prison term. *Vandergrift*, 754 F.3d at 1311. But merely discussing how defendants would benefit from substance abuse treatment programs that the BOP offers does not violate *Tapia* or *Vandergrift*. Rather, courts do "something very right" in trying to get defendants into appropriate substance abuse treatment programs. *Tapia*, 564 U.S. at 334, 131 S. Ct. 2392.

Here, the District Court only mentioned a substance abuse treatment program after it announced a prison term that it said would serve valid sentencing purposes. During the revocation hearing, the parties and the Court focused on King's repeated violations of the law and the terms of his supervised release, how the Court had treated King leniently in the past, and whether the 36-month sentence the Probation Office recommended was reasonable.[6] The Court emphasized King's repeated drug use and failures

---

[6] After focusing on the need to protect the public from King and King from himself given his drug use and violations of the terms of his supervised release, the Government stated that King "need[ed] a lengthy sentence with treatment to hopefully get beyond his addiction." That statement likely reflected the Government's hope that King would be placed in a facility that offered residential substance abuse treatment, not that the purpose of the sentence should

to attend substance abuse treatment sessions, both of which violated the terms of his supervised release.

The Court then stated it needed "to protect society, and, in doing that," protect King from himself, and announced it would impose a 36-month prison term. Public safety and specific deterrence are valid considerations under § 3553(a)(2)(C), which instructs courts to consider deterring "further crimes of the defendant" in order "to protect the public."

The District Court then referenced substance abuse treatment. The Court stated, "you need at least a 24-month term of imprisonment to have a chance at the intensive residential substance abuse treatment program," which it would recommend for King. The Court presumably referred to the Residential Drug Abuse Treatment Program (the "RDAP"). Under BOP policy, an inmate must ordinarily have at least 24 months remaining on his sentence to participate in the RDAP. *See* BOP Program Statement No. P5330.11 CN-1, § 2.5.1(d) (April 25, 2016) ("BOP Program Statement").[7] The Court also recommended to the BOP that King

---

be to promote rehabilitation. The Government did not argue that a 36-month sentence was necessary to make King eligible for the Residential Drug Abuse Treatment Program—which would have only required a 24-month sentence—or otherwise argue for a prison term based on rehabilitation.

[7] The residential program must include at least a 6-month period of "individual and group activities and treatment" during which participants live "in residential treatment facilities [in the prison] set apart from the general prison population." § 3621(e)(5)(A). Under BOP policy, the portion of the RDAP

21-12963                Opinion of the Court                21

"be imprisoned at an institution where substance abuse treatment programs are available."

Taken literally, the District Court's statement about the RDAP—which it made right after announcing the sentence—suggests that the Court considered rehabilitation as a purpose for ordering King to be incarcerated. *See Alberts*, 859 F.3d at 985–86. But context indicates that the Court did not impose the sentence for the purpose of rehabilitation. The Court evidently decided a 36-month prison sentence was necessary to protect the public from King. *See* § 3553(a)(2)(C). The District Court thus presumably found that a 36-month prison sentence was "sufficient, but not

during which participants live in separate housing for the program—the "unit-based" component—lasts between 9 and 12 months and is 500 hours long. *See* BOP Program Statement, § 2.5.1, 2.5.10. The program also contains a mandatory community treatment component during which participants are typically placed in residential reentry centers. *See id.* § 2.5.1 (quoting 28 C.F.R. § 550.53(a)(3)–(b)(3)). In between the unit-based component and the community treatment component, "[if] time allows," Residential Drug Abuse Treatment Program participants "participate in the follow-up services to the unit-based component of the RDAP." 28 C.F.R. § 550.53(a)(2). Follow-up services involve monthly sessions that must last at least an hour each, and participants live among the general prison population. *See* BOP Program Statement, § 2.6. The BOP has presumably decided that inmates ordinarily need 24 months to complete the program.

An inmate "convicted of a nonviolent offense" who completes the RDAP can also obtain an early release of up to one year. § 3621(e)(2)(B). 28 C.F.R. § 550.55 covers the eligibility criteria for early release, including exclusions for inmates with current or prior convictions for certain crimes.

greater than necessary" to promote that purpose. § 3553(a)(2)(C). So, making King eligible for the RDAP—which only required a 24-month sentence—was likely not a purpose the Court considered when "crafting" or "lengthening" King's sentence. *Vandergrift*, 754 F.3d at 1310–11.

Instead, the District Court may very well have decided on a 36-month sentence based on public safety and specific deterrence, and only after announcing that sentence noted that King would be eligible for the RDAP and that it was recommending the program. Moreover, just because the District Court noted that the sentence would make King eligible for the RDAP does not mean that it imposed the sentence for the purpose of rehabilitating King. In *Lucas*—the Seventh Circuit case *Vandergrift* cited as an example of a district court discussing treatment programs properly—the District Court had listed rehabilitation opportunities as one of several benefits the prison sentence would provide. *See Lucas*, 670 F.3d at 795. Yet the *Lucas* Court found no *Tapia* error.

It is likewise not obvious here that the District Court did more than merely tell King that the sentence would provide an opportunity for rehabilitation. If that is all the Court did, it provided nothing like the medical model sentencing Congress had in mind when it proscribed consideration of rehabilitation in crafting prison sentences. The Court instead followed federal sentencing policy and sentenced King to a prison term based on its findings about the need to protect the public. Further, it was appropriately aware that King would benefit from substance abuse treatment while in prison

given Congress's mandates to the BOP under § 3621, and it exercised its discretion to recommend that the BOP place King in a facility that offers treatment programs.

All told, whether the District Court considered rehabilitation as a purpose driving its decision to incarcerate King is unclear from the record. The Court therefore did not plainly err.

Further, even if the District Court erred, any such error did not harm King's substantial rights. As discussed above, the record shows the District Court's primary considerations in sentencing King were public safety and specific deterrence, which fall squarely under § 3553(a)(2)(C). The record thus strongly indicates the Court would have imposed the 36-month prison sentence without any consideration of the RDAP. So, any *Vandergrift* error did not affect King's substantial rights. *Cf. Vandergrift*, 754 F.3d at 1312 (finding consideration of rehabilitation did not harm the defendant's substantial rights when "the court's primary considerations" included "the safety of the public," the defendant's continued possession of illicit materials while on supervised release, and general deterrence, § 3553(a)(2)(B)); *Alberts*, 859 F.3d at 986 (finding a *Tapia* error did not harm a defendant's substantial rights when the court's primary considerations included the seriousness of the offense, specific deterrence, and public safety).

★ ★ ★

The District Court did not abuse its discretion in sentencing King.  King forfeited the *Tapia* issue, and regardless, any *Tapia* error fails at prongs two and three of plain error review.

**AFFIRMED.**

21-12963                Rosenbaum, J., Dissenting                1

ROSENBAUM, Circuit Judge, dissenting:

I respectfully dissent because, in my view, the district court's consideration of rehabilitation substantially underlaid its decision to impose a 36-month term of imprisonment. That violated *Tapia v. United States*, 564 U.S. 319, 334-35, 131 S. Ct. 2382, 2393 (2011) ("[T]he court may have calculated the length of *Tapia*'s sentence to ensure that she receives certain rehabilitative services. And that a sentencing court may not do."), and our own precedent, *United States v. Vandergrift*, 754 F.3d 1303, 1311 (11th Cir. 2014) ("Here the district court did exactly what *Tapia* and our precedent instruct district courts not to do—it *considered* rehabilitation when crafting Vandergrift's sentence of imprisonment.").

True, King did not raise this issue expressly. But he challenged the substantive reasonableness of his sentence. And in evaluating that, we must consider the district court's reasoning for the sentence it imposed. As the majority opinion notes, the district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) ***gives significant weight to an improper or irrelevant factor***, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (quotation marks omitted) (emphasis added).

Here, the district court gave significant weight to rehabilitation as a factor. Indeed, both the probation officer and the

2                          Rosenbaum, J., Dissenting                    21-12963

government incorrectly urged the district court to do so.  But as I've noted, considering rehabilitation in imposing the sentence was plain error under both Supreme Court and our precedent.  For that reason, I would vacate the sentence and remand for resentencing without consideration of rehabilitation.