**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10628

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

BRIAN JOSEPH MCKAY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:24-cr-00006-TKW-MJF-1

_____

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Brian McKay appeals his sentence of 180 months' imprisonment followed by lifelong supervised release. He argues that the District Court erred by improperly considering rehabilitation when imposing his sentence. We affirm.

## I.

Law enforcement executed a search warrant of Brian McKay's residence after receiving a tip from the National Center for Missing & Exploited Children (NCMEC). During the search, officers uncovered numerous files on McKay's cellphone containing child pornography, over 51,000 images of child pornography involving prepubescent children on other devices, and online conversations in which McKay discussed distributing child pornography to others. McKay was indicted on one count of receiving child pornography, three counts of distribution of child pornography, and one count of possession of child pornography involving a prepubescent minor, all in violation of 18 U.S.C. §§ 2552A(a)(2) and 2552A(b)(1). McKay was released on pretrial supervised release. As conditions of his release, he was not to possess or use a computer or connected device, and the only time he could use a computer or access the internet was for job applications or hiring purposes when inside a business.

Pursuant to a plea agreement, McKay pleaded guilty to the receipt count, and the Government dropped all other charges. In the presentence investigation report (PSI), the probation officer calculated a base offense level of 22. She then added 2 points each for

the child pornography involving prepubescent minors, distributing the child pornography to other people, and possessing the child pornography on a computer and cellphones. She also added 4 points because the child pornography displayed sadomasochism and 5 points because McKay possessed more than 600 images. This brought the total offense level to 37. McKay had a criminal history score of zero and criminal history category of I. This gave him a Guidelines imprisonment range of 210 to 262 months, but this was adjusted to a range of 210 to 240 months based on the 20-year statutory maximum prison sentence. The statutory minimum prison sentence was 5 years.

The PSI also explained that while McKay was on pretrial release, and after McKay's plea agreement was submitted to the Court, law enforcement received another tip from NCMEC that McKay, again, may be in possession of child pornography on a cellphone. During a home contact at McKay's residence, the probation officer discovered the phone in plain view. The phone was powered on and playing a podcast, and the home screen reflected connection to 5G data. The officer confiscated the phone and submitted McKay's possession of the unauthorized connected device as a violation of his release. Forensic examination later revealed that the phone contained additional child pornography photographs and videos.

An arrest warrant was issued for the violation, and the U.S. Marshal's Service instructed McKay to self-surrender to submit to presentence detention. When McKay failed to self-surrender,

supervising pretrial services officers went to McKay's residence and found him lying on the ground with a knife blade fully inserted into his sternum. They also discovered a lengthy suicide note in his residence. McKay was treated, and his arrest warrant was executed two days later. The District Court adopted the PSI and used its calculated range during sentencing.

At sentencing, the Government requested a sentence within the Guidelines range, citing McKay's pretrial violation and overall offense conduct. McKay, in turn, requested the five-year statutory mandatory minimum. He apologized for his conduct and "indirectly affecting the victims," and he stated that he obtained the unauthorized phone to look for work and that a "slippery slope" led him to possess the additional child pornography on it. He also explained that

> [I]f five years is the minimum, I don't see that I require more than five years of classes and counseling and medication and rehabilitation. I just don't see it will take more than that to learn coping skills and addiction counseling and all the programs and classes that I would partake of. I just don't see how it would take, you know, 20 years. Just every day thinking I hope I don't get thrown in the clink for 20 years. It doesn't take 20 years to rehabilitate or correct.

McKay's attorney later cited McKay's prior history as a law-abiding citizen, his military service, his work history, his charitable work, his status as a blood and organ donor, his history of depression, the effect of losing his father at a young age, his health issues,

his family relationships, his suicide attempt, and his addiction to child pornography. The attorney also stated that "there's some very specific things that [McKay] needs" and asked the Court to consider those "programming needs" and to consider the physical health issues that stem from McKay's suicide attempt, which "obviously [would] make his stay in the Bureau of Prisons more difficult."

After hearing both sides, the District Court discussed many factors, including: the nature and circumstances of the instant offense; McKay's mental health issues, military service, age, and volunteerism; the impact his conduct had on his family; and the need to protect the public. The Court noted that McKay's willingness to continue the same criminal conduct while on pretrial release was something that needed to be stopped and that "can only be stopped through a sentence that doesn't allow [him] to do that." The Court also expressed that it was a "little bit trouble[ed]" by McKay's statement that he only "indirectly affect[ed] the victims" but noted that McKay's conduct "fell more towards the bottom end" of the spectrum of child pornography cases and was "particularly not the most serious."

However, the Court explained that McKay violated his pretrial release "in a fairly egregious manner" by engaging in "the exact same criminal conduct that brought [him] into the court system," which "elevates the seriousness of [his] offense . . . because it shows that but for incapacitation, [he] would continue to commit this crime." Though, the Court did note that the violation was

"already reflected in the guidelines in some way because but for [the violation, McKay] would have gotten the benefit of an acceptance of responsibility [point reduction]," which would have given him a lower Guidelines range. The Court also explained that it had to consider any services McKay might need, noted that McKay needed mental health counseling and sexual offender counseling, and stated that "the question is where can [he] best get that. Can [he] best get that out on the street? Can [he] best get that in the prison system?"

The Court then explained that but for McKay's pretrial release violation, it "would be looking at the bottom end, or perhaps below, the guideline range here" but that it "can't get past what happened while [McKay was] on pretrial supervision." Therefore, while the Guidelines range "[was] a bit higher" than needed, "a substantial sentence [was] appropriate." The Court ultimately sentenced McKay to 180 months' imprisonment followed by lifelong supervised release. The Court then asked if there was any objection to the sentence or the manner in which it was imposed. In response, McKay said "nothing new." McKay timely appeals, arguing that the Court erred by improperly considering rehabilitation as a purpose of his term of imprisonment.

## II.

We review the procedural and substantive reasonableness of a sentence for abuse of discretion. *United States v. Wetherald*, 636 F.3d 1315, 1320 (11th Cir. 2011). However, when an issue is raised for the first time on appeal, we review for plain error. *United States*

*v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). "To establish plain error, a defendant must show: (1) an error; (2) that was obvious; (3) that affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dudley*, 5 F.4th 1249, 1255 (11th Cir. 2021). To meet the third prong, the error "must have affected the outcome of the district court proceedings." *United States v. Vandergrift*, 754 F.3d 1303, 1312 (11th Cir. 2014) (internal quotation marks omitted).

However, "when a party induces or invites the district court into making an error," *United States v. Cobb*, 842 F.3d 1213, 1222 (11th Cir. 2016), "it precludes a court from [later] invoking the plain error rule and reversing." *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (citation and internal quotation marks omitted). In other words, we cannot review an alleged error that the party affirmatively encouraged the district court to make, *United States v. Pendergrass*, 995 F.3d 858, 881 (11th Cir. 2021), for "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party," *Love*, 449 F.3d at 1157 (citation and internal quotation marks omitted).

"[A] sentence may be procedurally unreasonable if the district court improperly calculates the guideline range, treats the guidelines as mandatory, fails to consider the appropriate [sentencing] factors, bases the sentence on clearly erroneous facts, or fails to adequately explain its reasoning" for the sentence imposed. *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008). "The

district court is not required to explicitly address each of the [sentencing] factors"; an "acknowledgment" that it has considered the factors and the defendant's arguments is enough. *United States v. Al Jaberi*, 97 F.4th 1310, 1330 (11th Cir. 2024) (citation and internal quotation marks omitted). The factors include, among others, "the nature and circumstances of the offense," "the history and characteristics of the defendant," protecting the public, and deterring future crime. 18 U.S.C. § 3553(a). However, though the defendant's rehabilitative needs can be considered for imposing other types of sanctions, it cannot be considered, even as one factor among many, in the decision to "impose[] or extend[] a prison sentence." *United States v. King*, 57 F.4th 1334, 1343–44 (11th Cir. 2023).

Here, though the Court did not expressly state that promoting rehabilitation was a purpose of the prison term imposed, it did state that McKay's "needed services" was a "factor[] that come[s] into the equation." It then explained that mental health counseling and sexual offender counseling were among his needed services and stated that "the question is where can you best get that. Can you best get that out on the street? Can you best get that in the prison system?" The Court, thus, clearly considered rehabilitation in deciding to impose the prison sentence. It characterized it as a factor in the decision and as the crux of the choice between the prison system and the street. This is error.

However, McKay invited the Court to make that error. Though it is arguable whether the statements by McKay's attorney invited it, the statements by McKay himself certainly did. He told

the Court that five years in prison was enough time for him to re-habilitate and that rehabilitation would not take 20 years. In other words, McKay expressly cited rehabilitation as a reason for the prison sentence he requested. Though his reply brief is correct in stating that rehabilitation was "relevant to the non-incarcerative portion of his sentence," he clearly asked the Court to consider it in the incarceration decision as well. He invited the Court to consider rehabilitation as a purpose of the prison term it imposed, and he cannot claim that such consideration is reversible error now.

Further, even if we were not "preclude[d] from invoking the plain error rule," *Love*, 449 F.3d at 1157 (citation and internal quotation marks omitted)—that is even if McKay did not invite the District Court's error—he would still lose under plain error review. Though he would meet the first and second prong of the plain error test, he would fail the third. The Court erred, and the error was obvious. *See King*, 57 F.4th at 1343–44; *see also United States v. Corbett*, 921 F.3d 1032, 1037 (11th Cir. 2019) ("[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."). However, McKay did not show how the error affected his substantial rights. Rehabilitation was only a small part of the Court's discussion, and the Court considered many other factors, including the nature of the instant offense and the egregiousness of the pretrial release violation, which it could not "get past." In other words, "[t]he sentencing transcript reflects that [McKay's] rehabilitative needs clearly constituted only a minor fragment of the court's reasoning"

and that other considerations "drove the district court's sentencing decision." *Vandergrift*, 754 F.3d at 1312 (internal quotation marks omitted). The Court's consideration of rehabilitation did not "affect[] the outcome of the . . . proceedings." *Id.* (internal quotation marks omitted).

## III.

Though the District Court erred in considering McKay's rehabilitative needs, McKay invited it to make such error and, even if McKay did not invite it, he did not show that the error affected his substantial rights. We affirm the sentence imposed by the District Court.

**AFFIRMED.**